**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**The TEXAS PIPE LINE COMPANY,
Defendant-Appellant.**

**No. 78–1398.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 26, 1979.

Decided Dec. 21, 1979.

Rehearing Denied Jan. 10, 1980.

Jack M. Short, Tulsa, Okl., for defendant-appellant.

John R. Osgood, Asst. U. S. Atty., Muskogee, Okl. (Julian K. Fite, U. S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from summary judgment in favor of the United States in its action against The Texas Pipe Line Company (the Company) to collect a $2,500 civil penalty assessed by the United States Coast Guard under the Federal Water Pollution Control Act (FWPCA or the Act), 33 U.S.C. § 1251, *et seq.* The issues on appeal are whether the discharge of oil involved was into "navigable waters" within the meaning of the FWPCA, and if so, whether the penalty was excessive.

The facts are undisputed. The Company's pipeline running through a farm in Atoka County, Oklahoma, was struck by a bulldozer operator working for the farmer-owner of the land. Before the flow could be shut off, approximately 600 barrels of oil escaped. The oil spilled into an unnamed tributary of Caney Creek, which discharges into Clear Boggy Creek, itself a tributary of

the Red River. The record shows there was a small flow of water in the unnamed tributary at the time of the spill; there is no evidence that the other streams were or were not flowing. The Company took prompt action both to report the spill and to clean it up, utilizing a temporary dam it built on the unnamed tributary. Some 510 barrels of the oil were recovered. The Company was not at fault in any way; for its speedy action and cooperation the Company was commended by Coast Guard officials charged with responsibility under the FWPCA. Nonetheless, a $2,500 civil penalty was assessed against the Company under 33 U.S.C. § 1321(b)(6).

The Company contends that since the spill was confined to the unnamed tributary, no "navigable waters" within the meaning of the FWPCA were involved. *See* 33 U.S.C. § 1362(7). But we held in *United States v. Earth Sciences, Inc.,* 599 F.2d 368 (10th Cir. 1979), that Congress did not in this Act use the term "navigable waters" in the traditional sense; Congress intended to extend the coverage of the Act as far as permissible under the Commerce Clause. We there held the Act applied to discharges into a stream entirely confined to one county wherein two dams collected all of the stream flow. While there is nothing in this record to show the effect on interstate commerce of this unnamed tributary, without question it is within the intended coverage of the FWPCA. It was flowing a small amount of water at the time of the spill. Whether or not the flow continued into the Red River at that time, it obviously would during significant rainfall. The intent of the Act was to cover all tributaries to waters like the Red River. *See United States v. Ashland Oil & Transp. Co.,* 504 F.2d 1317 (6th Cir. 1974). It makes no difference that a stream was or was not at the time of the spill discharging water continuously into a river navigable in the traditional sense.

With respect to the penalty assessed, we sympathize with the Company. Despite its lack of fault and prompt actions to clean up the spill, it was assessed a $2,500 civil penalty. Still we must uphold the penalty.

It is admitted the statute does not require fault to support the penalty. *See Ward v. Coleman,* 598 F.2d 1187, 1191 (10th Cir.), *cert. granted,* —— U.S. ——, 100 S.Ct. 291, 62 L.Ed.2d 305 (1979). The assessments are deposited in a revolving fund to pay the costs of administering the Act and to finance the cleanup of oil spills when the costs are not otherwise recoverable. *Id.;* 33 U.S.C. § 1321(k). In determining the amount of the penalty the officials are to consider "the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation . . . ." 33 U.S.C. § 1321(b)(6). The officer who assessed the penalty declared that he based its size primarily upon the amount of the spill, which he regarded as a large one, and that he assessed the penalty at only half of the maximum permitted under the Act because there was no fault on the part of the Company. The Company was given an opportunity for a hearing and to comment on its size and whether the $2,500 would impair its ability to do business. It responded substantially to the effect that it could afford the penalty; it is a wholly-owned subsidiary of Texaco, Inc.

On the record as outlined above it appears that all factors required by the Act were taken into account in determining the size of the penalty. Unless we can say as a matter of law that the Coast Guard must assess only a nominal penalty when there is no fault, we must affirm. Considering the costs to the government of policing any oil spill, the elimination in the FWCPA of fault as a prerequisite to liability and the clear specification of items to be considered in determining the size of the penalty, we cannot say $2,500 exceeds the authority of the agency charged with the administration of the Act. *See United States v. Beatty, Inc.,* 401 F.Supp. 1040 (W.D.Ky.1975) ($2,000 fine upheld, spill of 5 to 15 gallons of oil).

Affirmed.

BARRETT, Circuit Judge, concurring in part and dissenting in part:

I concur in that part of the majority opinion holding that the discharge of oil

involved in this case was into "navigable waters" within the meaning of the Act.

I dissent from that part of the opinion upholding the penalty assessed in amount of $2,500.00. I do not suggest that such a penalty cannot be supported based on the facts and circumstances of this case, but I do suggest that if such be true the Coast Guard has failed to set forth adequate rationale. The simple statements that the agency is empowered to assess a penalty between $1.00 and $5,000.00 based on "the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation" are not standards from which a reviewing court can measure whether the administrative agency has acted arbitrarily, capriciously and unreasonably. The fact that the "no fault" spill in this case was large is about the only substantial finding made by the assessing officer. That fact works to the advantage of the Company in that the record is clear that it did an excellent, expeditious job of cleaning up the spill, meriting special commendation from the Coast Guard. Thus, it would appear that the sole basis for the assessment relates to the need for collection of funds in the nature of the penalties in order to meet the costs of administering the Act. 33 U.S.C.A. § 1321(k). If this be the basis for the penalty, the reviewing courts should be so advised. I would send the case back to the Coast Guard with instructions that it set forth the precise basis for the penalty assessment.