**QUIVIRA MINING COMPANY and Homestake Mining Company, Petitioners,**

**v.**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**Nos. 83–2338, 83–2339 and 83–2356.**

United States Court of Appeals, Tenth Circuit.

June 10, 1985.

---

G. Stanley Crout, Santa Fe, N.M. (Sunny J. Nixon, Santa Fe, N.M., with him on brief), Stephenson, Carpenter, Crout & Olmsted, Santa Fe, N.M., for petitioner Homestake Mining Co.

Richard A. Meserve, Washington, D.C. (Peter J. Nickles and Theodore Voorhees, Jr., Washington, D.C., with him on brief), Covington & Burling, Washington, D.C., for petitioner Quivira Mining Co.

John L. Wittenborn, Dept. of Justice, Washington, D.C. (Jose R. Allen, Dept. of Justice, and Colburn T. Cherney and Joseph Freedman, E.P.A., Washington, D.C., with him on brief), for respondent.

Before HOLLOWAY, Chief Judge, DOYLE, Circuit Judge, and SAFFELS, District Judge.[*]

SAFFELS, District Judge.

Petitioners in these consolidated cases challenge the authority of the Environmental Protection Agency [hereinafter EPA] under the Clean Water Act, as amended, 33 U.S.C. § 1251, *et seq.*, to regulate the discharge of pollutants from uranium mining and milling facilities into gullies or "arroyos."

Quivira Mining Company [formerly Kerr-McGee Nuclear Corp.] is contesting EPA permits (National Pollution Discharge Elimination System Permits) to two of its uranium milling or mining facilities near Grants, New Mexico. Those facilities are referred to as Ambrosia Lake, which discharges pollutants into Arroyo del Puerto under Permit No. NM0020532, and Lee Mines, which discharges pollutants into San Mateo Creek under Permit No. NM0028207. Homestake Mining Company [formerly United Nuclear Homestake Partners] contests Permit No. NM0020389 regulating its discharges into Arroyo del Puerto. The companies contend that Arroyo del Puerto and San Mateo Creek are not "waters of the United States," and therefore the EPA has no jurisdiction under the Clean Water Act to require permits authorizing discharges into these waters.

---

[*] Honorable Dale E. Saffels, United States District Judge, District of Kansas, Sitting by Designation.

This appeal is from two written determinations of the EPA Administrator [hereinafter Administrator] to deny review, which are embodied in orders dated August 5, 1983. There are two issues before the court. First, the court must determine how much deference, if any, to give to the findings of the Administrator. Petitioners contend that the court should evaluate the record independently, giving no special weight to the factual determinations of the agency, because the agency's determinations of the facts are "jurisdictional." The EPA contends that the record is the product of an adjudicatory hearing and the court must find the agency action to be "unsupported by substantial evidence" before such action can be set aside. The second issue is whether the discharges are subject to regulation as discharges into the waters of the United States.

The Clean Water Act does not set forth standards for reviewing the EPA's decision, so this court must look to the Administrative Procedure Act for guidance. 5 U.S.C. § 701, et seq.; Avoyelles Sportsmen's League, Inc. v. Marsh, 715 F.2d 897, 904 (5th Cir.1983). When agency action is based upon an adjudicatory hearing, the court may not set aside the agency decision unless it is unsupported by substantial evidence. 5 U.S.C. § 706(2)(E). Substantial evidence is "such relevant evidence as a reasonable mind would accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); Consolo v. Federal Maritime Commission,

383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo, supra, at 620, 86 S.Ct. at 1026.

Petitioners contend that when the agency's determinations of fact are "jurisdictional," the court must independently assess the record, giving no special weight to the determinations of the agency. See Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

■ We agree that the court must engage in a substantial inquiry and an in-depth review of the record. Chrysler Corp. v. Dept. of Transportation, 472 F.2d 659 (6th Cir.1972). Such an inquiry is required by the "substantial evidence" test. Id. We disagree, however, that this court may engage in independent or de novo review without giving weight to the determination of the Administrator. Crowell v. Benson, supra, to the extent that it retains its validity [1], does not apply to this case. The standards set forth in the Administrative Procedure Act govern.

Petitioners' argument would require that in every case involving the issuance of an EPA permit to discharge pollutants the adjudicatory hearings and special findings of the Administrator would be entitled to no special weight. Such a result would contradict the clear meaning of the Administrative Procedure Act and would deprive the appellate courts of the expertise of the agency in determining such matters.[2]

1. See Estep v. United States, 327 U.S. 114, 142, 66 S.Ct. 423, 436, 90 L.Ed. 567 (1946) (J. Frankfurter, concurring), that one had supposed that the doctrine of Crowell v. Benson, supra, "had earned a deserved repose."

2. Petitioners emphasize language in Avoyelles Sportman's League, Inc. v. Marsh, 715 F.2d 897 (5th Cir.1983), from which petitioners infer that de novo review is appropriate when the court must determine whether the EPA has "any" jurisdiction over a particular discharge of pollutants. In Avoyelles, the plaintiffs argued that the district court's determination of the wet-

lands issue under the Clean Water Act was correctly decided under de novo review because the EPA's determination was a jurisdictional decision. The court disagreed and noted that the issue in that case was the extent of the EPA's jurisdiction, not the existence of jurisdiction. The landowners there had conceded that thirty-five percent (35%) of the tract was subject to agency jurisdiction. The question was the extent of the agency jurisdiction beyond that 35% of the tract.

The court did not have before it the question of what standard of review would be employed when the agency fact-finding was determinative

Viewed in the light of the substantial evidence test, the court finds that both the Arroyo del Puerto and the San Mateo Creek flow for short distances from the discharge points. Although neither the Arroyo del Puerto nor the San Mateo Creek is navigable-in-fact, surface flow occasionally occurs, at times of heavy rainfall, providing a surface connection with navigable waters independent of the underground flow. Additionally, the waters of the Arroyo del Puerto and the San Mateo Creek soak into the earth's surface, become part of the underground aquifers, and after a lengthy period, perhaps centuries, the underground water moves toward eventual discharge at Horace Springs or the Rio San Jose.

■ It is the national goal of the Clean Water Act to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a)(1). The term "navigable waters" means "the waters of the United States, including the territorial seas." In *United States v. Earth Sciences, Inc.*, 599 F.2d 368 (10th Cir.1979), this court noted that the Clean Water Act is designed to regulate to the fullest extent possible [3] sources emitting pollution into rivers, streams and lakes. *Id.* at 373. "The touchstone of the regulatory scheme is that those needing to use the waters for waste distribution must seek and obtain a permit to discharge that waste, with the quantity and quality of the discharge regulated." *Id.* It is the intent of the Clean Water Act to cover, as much as possible, all waters of the United States instead of just some. *Deltona Corp. v. United States*, 657 F.2d 1184, 1186, 228 Ct.Cl. 476 (1981).

The extent of the Clean Water Act's coverage of discharges of pollution is illustrated by a review of some of the cases which have been before the United States Court of Appeals for the Tenth Circuit. In *Ward v. Coleman*, 598 F.2d 1187 (10th Cir.1979), *reversed on other grounds* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), the court found that Boggie Creek, a tributary of the Arkansas River, is a navigable water of the United States for purposes of the Clean Water Act because the Arkansas River is navigable in fact. *Id.*, 598 F.2d at 1188, n. 1. In *United States v. Earth Sciences, Inc., supra,* the court found the Rito Seco to be a "water of the United States," although it is not navigable in fact nor does it transport any goods or materials, and although it is located entirely in Costilla County, Colorado. Although the Rito Seco did not provide a very significant link in the chain of interstate commerce, the court found that the stipulation of facts indicated at least some interstate impact from the stream and that was all that was necessary under the act. There, the facts were that the stream supported trout and some beaver, the water collected in the reservoirs was used for agricultural irrigation, and the resulting products were sold into interstate commerce. The court stated, "It seems clear Congress intended to regulate discharges made into every creek, stream, river or body of water that in any way may affect interstate commerce. Every court to discuss the issue has used a commerce power approach and agreed upon that interpretation." *Id.* at 375. In *United States v. Texas Pipe Line Co.*, 611 F.2d 345 (10th Cir.1979), the court found that the Clean Water Act covered oil spilled

of the "existence of agency jurisdiction." The supposed implications of the language of *Avoyelles* are not binding on the court. The distinction attempted to be drawn by petitioners between the "extent" of jurisdiction and the "existence" of jurisdiction is a distinction without a difference. In the instant case, the question is one of both the existence and the extent of agency jurisdiction. Petitioners concede that the EPA has jurisdiction over discharges of pollutants into the waters of the United States. Determination of whether certain water is a "water of the United States" is certainly a ques-

tion going to the extent of the EPA's jurisdiction. In this case, under our limited facts, the question is also determinative of the existence of jurisdiction.

3. The Constitution of the United States authorizes the federal government to "regulate Commerce ... among the several states." U.S. Const., Art. I, § 8. Congress has plenary authority to regulate commerce falling within the grant. See *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 196, 6 L.Ed. 23 (1824).

into an unnamed tributary of Caney Creek, which discharges into Clear Boggie Creek, itself a tributary of the Red River. The record reflected that there was a small flow of water in the unnamed tributary at the time of the spill, but there was no evidence that the other streams were or were not flowing. The court stated, "Congress did not in this Act use the term 'navigable waters' in the traditional sense; Congress intended to extend the coverage of the act as far as permissible under the commerce clause." *Id.* at 347. Even though nothing in the record supported an interstate commerce effect of this unnamed tributary, the court found that it was "without question" within the intended coverage of the Clean Water Act. The result was based substantially on the fact that the tributary was flowing a small amount of water at the time of the spill. "It makes no difference that a stream was or was not at the time of the spill discharging water continuously into a river navigable in the traditional sense." *Id.*

■ This court's findings in *Earth Sciences* and *Texas Pipe Line* compel a finding herein affirming the decision of the EPA. Substantial evidence here supports the Administrator's findings that both the Arroyo del Puerto and San Mateo Creek are waters of the United States. Substantial evidence before the Administrator supports his finding that during times of intense rainfall, there can be a surface connection between the Arroyo del Puerto, San Mateo Creek and navigable-in-fact streams. Further, the record supports the finding that both the Arroyo del Puerto and San Mateo Creek flow for a period after the time of discharge of pollutants into the waters. Further, the flow continues regularly through underground acquifers fed by the surface flow of the San Mateo Creek and Arroyo del Puerto into navigable-in-fact streams. The court finds that the impact on interstate commerce is sufficient enough to satisfy the commerce clause. And, as noted above, it was the clear intent of Congress to regulate waters of the United States to the fullest extent possible under the commerce clause.

The decision of the Administrator is AFFIRMED.