DIANE PIETROFESO, PLAINTIFF *v.* UNITED STATES, ET AL., U.S. CUSTOMS SERVICE, CAROL HALLETT, COMMISSIONER OF CUSTOMS, AND NICHOLAS BRADY, SECRETARY OF THE TREASURY, DEFENDANTS

Court No. 91–12–00897

(Dated July 26, 1993)

*Bettina Schein* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Mark S. Sochaczewsky)* for defendants.

## OPINION

RESTANI, *Judge:* The issue presented by this case is whether the government may deny an application for a customs broker's license on the ground that the applicant is related, by blood and by marriage, to persons who are members of an organized crime family.[1] This question was previously raised in *Pietrofeso v. United States,* 16 CIT 751, 801 F. Supp. 743 (1992) *("Pietrofeso I").* Finding insufficient information to justify denial of a license to Ms. Pietrofeso, this court remanded the case in order to give both parties the opportunity to flesh out the record. On remand, plaintiff's application for a license was again rejected. The case comes before the court now on plaintiff's motion for judgment on the agency record.

## FACTUAL BACKGROUND

The detailed facts of this case are recounted in *Pietrofeso I,* 16 CIT at 752–54, 801 F. Supp. at 745–46. Briefly summarized, the facts are that plaintiff is the niece of John Gotti and the daughter of Peter Gotti, two men evidenced in the record to be leaders of the Gambino organized crime family. An investigation report prepared by the government also cast suspicion on plaintiff's husband, Paul Pietrofeso, alleging his connection to organized crime entities. Plaintiff herself is nearly thirty years old, has no criminal record, and the investigation report revealed no derogatory information about her. From these facts, the United States Customs Service concluded that the business integrity and moral character of Ms. Pietrofeso were suspect. It therefore denied her application for a customs broker's license.[2] The Secretary of the Treasury affirmed.

This court found that "[i]f plaintiff cohabitates with her husband and he is engaged in organized crime, she may be denied a license * * * if the Secretary is able to draw the reasonable inference that she would not be

---

[1] This court has exclusive jurisdiction over denials of customs broker's licenses pursuant to 28 U.S.C. § 1581(g)(1) (1988).

[2] Lack of business integrity or poor moral character is a proper ground for denial under 19 C.F.R. § 111.16(b)(3) (1992).

in a position to avoid improper influence or intimidation in her importing duties." *Id*. at 758, 801 F. Supp. at 750. The record at that stage, however, did not establish either her husband's connection with organized crime or his influence over her importing duties. *Id*. Likewise, the mere assertion of blood relationships with organized crime figures cannot support the denial of a customs broker's license without a showing of likely improper influence or control. *Id*. at 759, 801 F. Supp. at 750–51. The court must now decide whether the government has submitted sufficient additional evidence to bolster its previous assertions as to plaintiff's husband and as to her family.

DISCUSSION

At the time of the court's previous decision in this case, there was only "the weakest hearsay evidence" linking plaintiff's husband to organized crime. *Id*. 801 F. Supp. at 750. The court directed both parties to present proof of Mr. Pietrofeso's financial status, his criminal history, if any, and the potential for influence over plaintiff's business decisions. *Id*. The government submitted an affidavit saying that certain information had been requested about Mr. Pietrofeso, but that it was not supplied by plaintiff's attorney. Defendant's Opposition to Plaintiff's Motion, at 5 and attached Affidavit of Frank Sharp. Ms. Pietrofeso belatedly attempted to offer evidence of her husband's legitimate investments.[3] Customs drew no specific conclusions about plaintiff's husband and did not rely on this failure to support its determination.

The government did compile additional information regarding the criminal activities of plaintiff's uncle and father. It introduced proof of the criminal conviction of plaintiff's uncle, the high-level positions of her uncle and father in the Gambino family, criminal activity at John F. Kennedy International Airport ("JFK"), and the way a customs broker could facilitate crime at JFK. In order to satisfy the dictates of the court, this information would have to show how the criminal activities of plaintiff's family affected "the importing venue in which the applicant is likely to work" and the likelihood that plaintiff could be controlled or influenced by her family. *Pietrofeso I*, 16 CIT at 759, 801 F. Supp. at 750–51.

The government's submissions do support a finding that organized crime does affect importing operations at JFK, the importing venue in which plaintiff is likely to work. In addition, plaintiff's attorney, in an informal conference, admitted that Ms. Pietrofeso has not limited her contact with her family, including those members involved in organized crime. There is no evidence in the record of frequent contacts, however. The record reveals only that plaintiff saw her family in a social context when they arranged and attended her 1989 wedding reception. *Id*. at 753, 801 F. Supp. at 745.

---

[3] Attached to plaintiff's motion papers were records of her husband's account at a credit union. These papers were not available to Customs for its decision on remand. Therefore, they will not be considered by the court at this stage in the proceedings. *See, e.g., United States v. Texas Pipe Line Co.*, 528 F. Supp. 728, 732–33 (E.D. Okla. 1978), *aff'd*, 611 F.2d 345 (10th Cir. 1979).

As noted in the court's previous decision in this case, "[t]here is no rational relationship between mere blood relationships and character or business integrity." *Id.* at 750. Customs may not base its decision solely on blood relationships. *See* U.S. Const. art. III, § 3. The court's previous decision clearly stated, "[i]t is up to the Customs Service and the Secretary to determine whether plaintiff's business integrity is negatively affected because she is likely to be influenced or controlled by persons involved in criminal activities." *Id.* at 751.

The government has failed to investigate either the nature and degree of Ms. Pietrofeso's contact with her family since the 1989 wedding reception or her husband's alleged criminal activity. Without such evidence, there can be no finding of likely influence or control. Thus, the court is forced to remand the case once more for further fact-gathering by the government. If plaintiff does not cooperate in the government's renewed investigation, the license may be denied. At this stage, Customs has no choice but to complete the investigation in the manner directed by the court, in the interest of both the applicant and the public. The remand determination shall be submitted within 45 days hereof.