ORDER DENYING CERTIFICATION FOR INTERLOCUTORY APPEAL
SNYDER, District Judge.
I. INTRODUCTION
The present case is brought by the United States under the Clean Water Act, 33 Ü.S.C. § 1251 et seq. (“CWA”). The government filed its complaint on July 7, 2000, alleging that defendants Richard Adam, his sons Peter, Kieran and Dominic Adam, and the family’s businesses, Adam Brothers Farming, Inc., and Iceberg Holdings, L.P., violated the CWA by draining, filling and grading wetlands and channelizing a creek on their property without a permit from the United States Army Corps of Engineers (the “Corps”).
*1181 II. FACTUAL BACKGROUND
Defendants are the owners of land located near the community of Orcutt in Santa Barbara County, California (the “Site”). Orcutt Creek, which the parties variously describe as an intermittent stream, an ephemeral stream, and a flood channel, traverses the Site from east to west. In 1998 and 1999, defendants allegedly engaged in activities which altered the hydrology of the Site and had an adverse environmental impact on it. See December 8, 2003 Findings of Fact and Conclusions of Law (“Order”) at 2. These activities allegedly included discharging dredge and fill materials into Orcutt Creek and wetlands adjacent to Orcutt Creek without a permit. Id.
According to the government, defendants were required to, but did not, obtain a permit from the Corps pursuant to section 404 of the CWA before discharging dredge and fill material into environmentally sensitive areas. Order at 2.
III. PROCEDURAL BACKGROUND
On July 7, 2000, the government commenced this action, alleging claims for unlawful discharge of dredged and fill material and failure to comply with a remediation order. Defendants filed a motion for summary judgment on December 19, 2001, on the ground that the Corps lacks regulatory jurisdiction pursuant to section 404 of the CWA over the Site. In an order dated July 12, 2002, the Court denied defendants’ motion for summary judgment. The Court found that there was a genuine issue of material fact as to whether pumping water from the Orcutt Creek channel into a reservoir which sometimes flows onward to the Santa Maria River created a sufficient hydrological connection with waters of the United States to give rise to CWA jurisdiction.
The Court has trifurcated the issues to be tried in this case. The issue of whether regulatory jurisdiction exists under the CWA was tried to the Court on February 6, February 7, February 11, February 12, February 13, February 14, February 20, February 26, and February 27, 2003. Thirteen witnesses testified and 136 exhibits were admitted into evidence.
On December 8, 2003, the Court concluded that regulatory jurisdiction existed over the Site pursuant to 33 C.F.R. § 328.3(a)(5). In particular, the Court found that because water in Orcutt Creek flowed through a set of “gravity flow pipes” underneath a farm road and out of the Betteravia lakes area, a hydrological connection existed between the Site and the Pacific Ocean that was sufficient to give rise to CWA jurisdiction. Order at 7-14. The Court also found that even if water flowed out of Orcutt Creek only as a result of pumping, a hydrological connection would still exist, giving rise to regulatory jurisdiction over the Site. Order at 15-18. Finally, the Court concluded that to the extent that wetlands existed on the Site, such wetlands were “ ‘wetlands adjacent’ to ‘waters of the United States’ pursuant to 33 C.F.R. § 328.3(a)(7).” Order at 21.
On May 21, 2004, defendants filed a motion to amend the December 8, 2003 Order to include certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). . In particular defendants seek certification of the following question of law for. interlocutory appeal:
Is an isolated, non-navigable irrigation ditch that may indirectly and intermittently discharge into a ‘navigable water’ only as a result of a man-made, mechanical pump and/or gravity flow pipes constructed, owned, and operated by unrelated third parties three miles away from Defendants’ property a “tributary” *1182 of navigable waters subject to section 404(a) of the Clean Water Act, as interpreted by the Supreme Court in SWANCC and by this Circuit in Headwaters ?
IV. LEGAL STANDARD
28 U.S.C. § 1292(b) provides that:
When a district judge, in making in a civil action an order not otherwise ap-pealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [the judge] shall so state in writing in such order.
The purpose of an interlocutory appeal is to “facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later” in order to “save the courts and the litigants unnecessary trouble and expense.” John v. United States, 247 F.3d 1032, 1051 (9th Cir.2001)(en banc)(J. Rymer, special statement). However, “Section 1292(b) is a departure from the normal rule that only final judgments are appealable and therefore must be construed narrowly.” Robin James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1068 (9th Cir.2002). See also City of Hope Nat. Medical Center v. Blue Cross of California, 928 F.Supp. 1001, 1004 (C.D.Cal.1996)(J. Wardlaw)(finding that, in spite of a “small minority” of federal courts taking a contrary position, no “substantial ground for difference of opinion” existed regarding a controlling issue of law given the “virtual unanimity” among the various circuits and within the Ninth Circuit). Finally, even if a district court certifies an order for interlocutory appeal “the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently.” Robin James, 283 F.3d at 1068.
V. DISCUSSION
A. Does the Order Decide a Controlling Question of Law in this Action?
Defendants argue that the Court’s December 8, 2003 Order decided a controlling question of law in this action. In particular, defendants contend that the issue of whether regulatory jurisdiction exists over the Site is an issue that must be resolved before the remainder of this action can be adjudicated. Mot. at 5-7, citing John, 247 F.3d at 1051 (addressing the certified question of whether “the term ‘public lands’ [as defined by statute] applies to navigable waters within the State of Alaska”). Defendants further argue that jurisdictional determinations are particularly well-suited for certification for interlocutory appeal. Mot. at 6.
The government responds that the Court’s Order only addresses whether the Corps has regulatory jurisdiction over the Site, and that there is no question that the Court has subject matter jurisdiction over this enforcement action. Opp. at 10. The government also argues that defendants improperly seek to challenge the Court’s findings of fact, rather than addressing controlling questions of law, as is required by 28 U.S.C. § 1292(b). Opp. at 7.
While it is true that defendants refer to Orcutt Creek as “isolated” in their proposed question for certification, defendants do not seek to challenge the Court’s finding that Orcutt Creek discharges water into the Santa Maria River “as a result of a man-made, mechanical pump and/or gravity flow pipes.” See Mot. at 5 (Defendants’ Proposed Certified Question). The Court concludes that the December 8, 2003 Order does decide a controlling question of law in this action — namely, whether the Corps can exercise regulatory jurisdiction over the Site pursuant to the CWA.
*1183 B. Are There Substantial, Grounds for Differences of Opinion?
Defendants argue that there are substantial grounds for differences of opinion as to how Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 SWANCC”) and Headwaters, Inc. v. Talent Irrigation District, 243 F.3d 526 (9th Cir.2001) impact the scope of the Corps’ regulatory jurisdiction pursuant to 33 C.F.R. § 328.3(a)(5). Defendants also contend that substantial grounds for differences of opinion exist as to whether the Orcutt Creek Ditch on defendants’ property is an “adjacent wetland” subject to jurisdiction under the CWA. The Court will consider these contentions in turn.
i. Differences of Opinion Among the Circuits and within the Corps Regarding the Application of SWANCC
Defendants argue that because the federal Courts of Appeals are split as to whether the Supreme Court’s holding in SWANCC applies to the exercise of regulatory jurisdiction pursuant to 33 C.F.R. § 328.3(a)(5), an interlocutory appeal is appropriate. Opp. at 8-9, citing Souza v. Scalone, 563 F.2d 385 (9th Cir.1977). In particular, defendants contend that Courts of Appeals for the Fourth, Sixth, Seventh and Ninth Circuit have interpreted SWANCC narrowly, such that the Supreme Court’s construction of the term “navigable waters” in SWANCC does not apply to actions in which the Corps asserts jurisdiction over a tributary of navigable waters pursuant to 33 C.F.R. § 328.3(a)(5).[1] However, defendants assert that the Fifth Circuit has applied the reasoning of SWANCC to cases in which regulatory jurisdiction was asserted over tributaries to navigable waters. See Mot. at 9 and Reply at 2-3, citing In re Needham, 354 F.3d 340 (5th Cir.2003) and Rice v. Harken Exploration Co., 250 F.3d 264 (5th Cir.2001). Defendants contend that district courts have also noted the existence of a circuit split. Opp. at 10. Finally, defendants assert that the Corps “has no consistent position on when a non-navigable body of water constitutes a tributary subject to its regulatory authority.”[2]
The government responds that while the approach taken by the Fifth Circuit may be inconsistent with that of the Fourth, Sixth, Seventh and Ninth Circuits, such a difference, of opinion cannot -provide grounds for an interlocutory appeal, because this Court must follow the approach taken by the Ninth Circuit. Opp. at 10, citing City of Hope National Medical Center, 928 F.Supp. at 1004. According to the government it is “without question in this circuit that a tributary need not be navigable-in-fact to qualify as ‘waters of the United States.’ ” Opp. at 9. Finally, the government contends that the lack of uniformity among various districts of the Corps is irrelevant to the issue of whether substantial grounds for differences of opinion exists regarding the application of SWANCC.
It is true that the Fifth Circuit has taken an approach contrary to that of the Fourth, Sixth, Seventh and Ninth Circuits. *1184 See In re Needham, 354 F.3d at 345 (“The CWA [is] not so broad as to permit the federal government to impose regulations over ‘tributaries’ that are neither themselves navigable nor truly adjacent to navigable waters.”) However “given the virtual unanimity among the various Circuits and indeed within the Ninth Circuit whose rulings this Court is bound to follow” the Court concludes that there are no substantial grounds for differences of opinion on this issue.[3] City of Hope National Medical Center, 928 F.Supp. at 1004.
ii. Differences of Opinion Within the Ninth Circuit Regarding the Application of SWANCC
Defendants also argue that there are substantial grounds for finding differences of opinion within the Ninth Circuit regarding the impact of SWANCC on the reach of regulatory jurisdiction pursuant to 33 C.F.R. § 328.3(a)(5). In support of this contention, defendants cite the dissent in an en banc case construing the term “public lands” under the Alaska National Interests Lands Conservation Act (“ANILCA”), 16 U.S.C. § 13101 et seq. See Opp. at 12, citing John v. United States, 247 F.3d 1032, 1046 (9th Cir.2001)(en banc)(J. Kozinski, dissenting)(citing SWANCC for the proposition that when one plausible interpretation of a statute removes an incident state sovereignty and another interpretation does not, a court must adopt the interpretation that preserves state sovereignty). Defendants argue that the controlling issue of law in this action “implicates the same federal/state issues addressed in SWANCC and referred to in John by three dissenting judges.” Opp. at 12.
The government replies that the dissent in John does not illustrate a substantial ground for difference of opinion regarding the issues decided in the Court’s Order. In particular, the government point out that the majority in John, implicitly agreed that SWANCC did not limit the reach of regulatory jurisdiction under ANLICA, and three concurring judges would have would have extended federal regulatory jurisdiction under ANILCA even further than the majority. Opp. at 11.
The Court notes that the dissenting opinion in John did not address the impact of SWANCC upon regulations promulgated pursuant the CWA. However, in Headwaters, Community Ass’n for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 955 (9th Cir.2002), and United States v. Phillips, 356 F.3d 1086 (9th Cir.2004), the Ninth Circuit did construe the scope of “navigable waters” under the CWA in light of SWANCC, and in each case reached a result contrary to that urged by the defendants. See, e.g., Headwaters, 243 F.3d at 533 (concluding that the Supreme Court’s limitation on the meaning of “navigable waters” in SWANCC did not affect the assertion of regulatory jurisdiction over irrigation canals because the canals were not “isolated waters” pursuant to SWANCC). Accordingly, the Court concludes that the analysis set forth by the dissent in John cannot give rise to substantial grounds for differences of opinion as to whether the Corps can exercise regulatory jurisdiction over the Site pursuant to 33 C.F.R. § 328.3(a)(5).
in. Differences of Opinion Within the Ninth Circuit Regarding the Application of Headwaters
Defendants next argue that there are substantial grounds fob differences of opinion as to whether non-navigable waters must serve as a link between navigable *1185 waters in order for regulatory jurisdiction to exist under the CWA. Opp. at 14. In particular, defendants contend that in Headwaters, Bosma Dairy, Phillips, and Borden Ranch Partnership v. United States Army Corps of Engineers, 261 F.3d 810 (9th Cir.2001), aff'd 537 U.S. 99, 123 S.Ct. 599, 154 L.Ed.2d 508 (2002), the non-navigable waters over which the government sought to exercise regulatory jurisdiction linked multiple navigable waters. By contrast, defendants argue that the Orcutt Creek ditch on the Site does not link two or more navigable waters. Opp. at 15. Defendants further argue that the Ninth Circuit has not expressly reached the issue of whether the Corps may exercise jurisdiction over “a non-riavigable tributary that is not truly adjacent to navigable-in-fact water,” and instead has only rejected the contention that the CWA is inapplicable to non-navigable tributaries.[4] Reply at 3-4, citing Headwaters and Phillips.
The government responds that neither Headwaters nor Bosma “even purports to require that the waterbody in question both flow into and receive water from a traditional navigable water to qualify as a tributary.” Opp. at 9. Rather, the government contends that, pursuant to the Court’s factual findings, Orcutt Creek fits squarely within the reach of the Corps’
regulatory jurisdiction as construed by the Ninth Circuit in Headwaters and its progeny.[5]
It is true that in Headwaters, the Ninth Circuit described the irrigation canals at issue as “receivfing] water from natural streams and lakes, and diverging] water to streams and creeks.” Headwaters, 243 F.3d at 533, see also Bosma, 305 F.3d at 955 (drain received water from the Yakima River, and discharged water “either directly or by connecting waterways into the Yakima River.”) However, Headwaters and subsequent cases emphasized that the decisive factor in determining whether regulatory jurisdiction exists under the CWA is whether the waterway at issue flows into a traditional navigable waterway, not whether the waterway receives water from a navigable waterway.[6] Indeed, in Phillips the Ninth Circuit held that CWA jurisdiction could be exercised over a creek which emptied into a larger creek, which in turn flowed into a navigable river. Phillips, 367 F.3d at 851. Accordingly, there can be no substantial difference of opinion that Orcutt Creek, which flows through gravity flow pipes under a farm road, and onwards out of the Betteravia lakes area into the Santa Maria River, falls squarely within the scope of CWA regulatory jurisdiction as set forth in Headwaters, Bosma and Phillips.[7]
*1186 iv. Differences of Opinion Regarding Regulatory Jurisdiction Pursuant to 33 C.F.R. § 328.3(a)(7)
Finally, defendants argue that the government has presented no evidence regarding whether any part of the Orcutt Creek ditch constitutes a wetland, such that the Corps could exercise jurisdiction over the Site pursuant to 33 C.F.R. § 328.3(a)(7). Mot. at 18-19. Defendants further contend that even if the Site does contain or border wetlands, the issue of whether the those wetlands can constitute “waters of the United States” pursuant to 33 C.F.R. § 328.3(a)(7) is subject to substantial dispute. Mot. at 20. In particular, defendants argue that the Ninth Circuit has not directly addressed this issue, and a Circuit split exists between the approach taken by the Seventh and Fourth Circuits and the approach taken by the Fifth Circuit. Mot. at 20, citing U.S. v. Rueth Development, Co., 335 F.3d 598 (7th Cir.2003), cert. denied, 540 U.S. 1050, 124 S.Ct. 835, 157 L.Ed.2d 699 (2003), Treacy v. Newdunn Associates, LLP, 344 F.3d 407 (4th Cir.2003), cert. denied, 541 U.S. 972, 124 S.Ct. 1874, 158 L.Ed.2d 466 (2004) and Rice.[8]
The government contends that the Court correctly followed the analysis set forth by the Seventh and Fourth Circuits, in holding that wetlands need not adjoin a waterway that is navigable-in-fact to give rise to jurisdiction pursuant to 33 C.F.R. § 328.3(a)(7). Opp. at 5.
In the December 8, 2003 Order, the Court concluded that to the extent any wetlands existed at the Site, jurisdiction existed over the Site pursuant to 33 C.F.R. § 328.3(a)(7).[9] Because the Court has concluded that regulatory jurisdiction exists over the Site pursuant to 33 C.F.R. § 328.3(a)(5) as a result of the natural flow of Orcutt Creek through gravity flow pipes, the issue, of whether regulatory jurisdiction exists over the Site pursuant to 33 C.F.R. § 328.3(a)(7) is not a controlling question of law in this action. Accordingly, the Court need not reach the issue of whether there are substantial grounds for a difference of opinion as to this issue.
In sum, the Court concludes that there are no substantial grounds for differences of opinion as to any controlling issues of law decided in the Court’s December 8, 2003 Order.
*1187 C. Will an Appeal Materially Advance the Termination of the Litigation?
Defendants argue that if the government has no regulatory jurisdiction over the Orcutt Creek ditch, this action must be dismissed for lack of subject matter jurisdiction. Mot. at 23. In addition, defendants assert that a jury trial is currently scheduled for the liability phase of the case, and an interlocutory appeal would prevent the Court from incorrectly instructing the jury. Mot. at 23-24.
In response, the government argues that defendants have delayed seeking certification for interlocutory appeal for over five months. Opp. at 12-13. The government asserts that the parties have negotiated a discovery and trial schedule, and have engaged in discovery regarding the liability and remedy aspects of this action.
The Order which defendants now seek to certify for interlocutory appeal was filed on December 8, 2003. Defendants did not file the present motion until May 21, 2004. Discovery regarding the liability and remedy phases of this action has commenced, and both the government and defendants have stipulated to a trial on the liability phase of this action beginning on January 25, 2005, with the remedy phase tried thereafter. See April 12, 2004 Joint Stipulation Regarding Discovery Issues and Proposed Scheduling Order. In light of the delayed filing of the present motion, the Court concludes that an appeal will not materially advance the termination of this litigation.
V. CONCLUSION
For the reasons set forth above, defendants’ motion to amend the Court’s December 8, 2003 Findings of Fact and Conclusions of Law to include certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is DENIED.
IT IS SO ORDERED.

. See Mot. at 9, citing United States v. Rapanos, 339 F.3d 447 (6th Cir.2003), cert. denied, 541 U.S. 972, 124 S.Ct. 1875, 158 L.Ed.2d 467 (2004), United States v. Krilich, 303 F.3d 784 (7th Cir.2002), and Headwaters. See also Reply at 3, citing United States v. Deaton, 332 F.3d 698 (4th Cir.2003), cert. denied, 541 U.S. 972, 124 S.Ct. 1874, 158 L.Ed.2d 466.

. Mot. at 10, citing a February 2004 General Accounting Office report entitled “Water and Wetlands: Corps of Engineers Needs to Evaluate Its District Office Practices in Determining Jurisdiction” (GAO-04-297)(available online at http:// www.gao.gov/new.items/d04297 .pdf).

. Likewise, the Court concludes that any differences among district offices of the Corps regarding the impact of SWAATCC are not relevant to the issue of whether the Court’s Order should be certified be for interlocutory appeal.

. In addition, defendants assert that because the water in Orcutt Creek flows through gravity flow pipes and the pumps, it constitutes a "point source," and is subject to discharge permit requirements pursuant to 33 U.S.C. § 1242(a). Opp. at 16. Therefore, defendants contend that it is illogical for Orcutt Creek to also be subject to regulation pursuant to 33 C.F.R. § 328.3(a)(5). Opp. at 16-17.

. The government argues that while man-made features such as pumps and gravity flow pipes may constitute a "point source,” this does not mean that such pumps and pipes should be ignored in determining whether site of a pollutant discharge is part of the "waters of the United States” under the CWA.

. See Headwaters, 243 F.3d at 533, citing United States v. Eidson, 108 F.3d 1336, 1341-42 (11th Cir.1997)("manmade ditches and canals that flow intermittently into creeks may be tributaries”) and United States v. Texas Pipe Line Co., 611 F.2d 345, 347 (10th Cir.1979)("unnamed tributary of creek that is tributary to river is ‘water of the United States' ”).

. The Court also concludes that there are no grounds for substantial differences of opinion in regard to the argument that possible regulation of pumps and gravity flow pipes as *1186 “point sources,” between two distinct bodies of water, does not preclude the existence of regulatory jurisdiction pursuant to 33 C.F.R. § 328.3(a)(5). The First Circuit in Dubois v. U.S. Department of Agriculture, 102 F.3d 1273, concluded that no hydrological connection existed under the CWA between two distinct bodies of water because "water from the East Branch certainly does not flow uphill into Loon Pond.” See also Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 493 (2d Cir.2001)(summarizing Dubois as finding that two bodies of water were distinct because "water would never naturally flow from river to pond” absent pumping). Defendants’ reliance on Du-bois is misplaced in that the Court has found that a hydrological connection exists by way of the gravity flow pipes. In addition, to the extent that Catskill Mountains relies on a distinction between natural and artificial connections, the approach taken by the Ninth Circuit in Headwaters is controlling.

. Defendants also argue that Treacy and Newdunn are distinguishable from this action, such that even if the Ninth Circuit chose to follow the analysis taken in those cases, the Site might fall outside the scope of regulatory jurisdiction pursuant to 33 C.F.R. § 328.3(a)(7).

. The Court's statement that "the waters of Orcutt Creek upstream of the gravity flow pipes are 'wetlands adjacent’ to 'waters of the United States’ pursuant to 33 C.F.R. § 328.3(a)(7)” was not a determination that Orcutt Creek constituted a wetland, but rather a legal conclusion that the Corps could exercise regulatory jurisdiction over any wetlands on the Site pursuant to 33 C.F.R. § 328.3(a)(7). See Order at 21.