**Robin JAMES, a married person in her separate capacity, Plaintiff–Appellant,**

v.

**PRICE STERN SLOAN, INC., a Delaware corporation; Penguin Putnam, Inc., a Delaware corporation, Defendants–Appellees.**

No. 00–35321.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2001.

Filed March 12, 2002.

---

John P. Mele, Ryan, Swanson & Cleveland, PLLC, Seattle, WA, argued the cause for the plaintiff-appellant.

David R. Goodnight, Dorsey & Whitney LLP, Seattle, WA, argued the cause for the defendants-appellees; Joseph C. Klein assisted on the brief.

Before: KOZINSKI and GOULD, Circuit Judges, and SCHWARZER, Senior District Judge.[*]

KOZINSKI, Circuit Judge:

Robin James is a successful artist. For five years, from 1977 to 1982, she illustrated a series of children's books published by Price Stern Sloan, Inc.[1] As the books became popular, the originals of James's illustrations rose in value. Years later, James requested that Price Stern return her original artwork. Price Stern complied by returning all the artwork that it could locate. Having eventually returned about half of the illustrations, Price Stern informed James that the remaining artwork had been irretrievably lost.

James sued Price Stern, claiming compensation for the lost artwork. Price Stern countered by arguing that the contracts governing James's work between 1977 and 1982 assigned the ownership of the artwork to Price Stern. The district court granted Price Stern's motion for partial summary judgment with respect to claims related to those contracts. James appeals and we must determine whether we have jurisdiction.[2]

The partial summary judgment disposed only of the claims brought under the contracts concluded between 1977 and 1982; it did not adjudicate claims related to two post–1982 book series.[3] After the district court granted partial summary judgment for Price Stern, James petitioned for dismissal of the remaining claims. The district court granted the motion, dismissed these claims without prejudice and entered what on its face appears to be a final judgment against James. The question we must answer is whether the judgment was, indeed, final.

The judgment summarized the court's two interim dispositions: the partial summary judgment for Price Stern and the dismissal of James's remaining claims. As to form, then, the judgment comports with the requirement of finality by disposing of all pending claims; after entry of this judgment, James had "no claims left for the district court to hear." *Horn v. Berdon, Inc. Defined Benefit Pension Plan,* 938 F.2d 125, 127 n. 1 (9th Cir.1991).

Price Stern argues, however, that James's appeal lacks finality because dis-

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

[1] Price Stern has been subsequently acquired by Putnam Berkeley Group, Inc., the predecessor of co-appellee Penguin Putnam, Inc. Price Stern is now a subdivision and an imprint of Penguin Putnam.

[2] This is the only subject of this opinion. The merits are resolved in a memorandum disposition. *See* 9th Cir. R. 36–3.

[3] The parties agree that James retained the ownership of the original artwork completed under the post 1982 contracts. Price Stern, however, reserved the right to raise other defenses against claims brought under these contracts.

missal of some of James's claims *without* prejudice leaves her free to resurrect these claims on remand if her appeal is successful. Relying on *Dannenberg v. Software Toolworks*, 16 F.3d 1073 (9th Cir. 1994), and *Cheng v. Commissioner*, 878 F.2d 306 (9th Cir.1989), Price Stern argues that a losing party's non-prejudicial dismissal of some claims is invariably "an impermissible attempt to 'manufacture finality' " as to the remaining claims.

■ We start by observing that there is no evidence James attempted to manipulate our appellate jurisdiction by artificially "manufacturing" finality. We have always regarded evidence of such manipulation as the necessary condition for disallowing an appeal where a party dismissed its claims without prejudice. *See Dannenberg*, 16 F.3d at 1076–77; *Cheng*, 878 F.2d at 310–11; *Fletcher v. Gagosian*, 604 F.2d 637, 638–39 (9th Cir.1979). In *Dannenberg* and *Cheng*, finality was achieved by a stipulation that if the judgment is reversed on appeal, appellant would be permitted to reinstate the dismissed claims. *Dannenberg*, 16 F.3d at 1074; *Cheng*, 878 F.2d at 308–09. The stipulation kept the dismissed claims on ice while appeal was taken from a partial judgment, circumventing the final judgment rule and arrogating to the parties the gatekeeping role of the district court.

Admittedly, a dismissal of some claims without prejudice always presents a possibility that the dismissing party would attempt to resurrect them in the event of reversal. But, absent a stipulation such as that in *Dannenberg*, plaintiff assumes the risk that, by the time the case returns to district court, the claim will be barred by the statute of limitations or laches. Such a unilateral dismissal is therefore much less likely to reflect manipulation. The court's

approval of the motion is usually sufficient to ensure that everything is kosher. Of course, the other party's failure to oppose the dismissal may be collusive (i.e. the result of a side agreement not brought to the court's attention), but Price Stern mentions no such agreement, and it would surely be aware of one if it did exist.

*Dannenberg* itself emphasized this distinction, drawing a contrast with *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir.1984). In *Robertson*, we allowed an appeal where, after the district court partially dismissed his complaint, the plaintiff voluntarily dismissed the remaining counts without prejudice. *Id.* at 533. As *Dannenberg* explained, "[i]n *Robertson*, [unlike] in this case, the claims disappeared from the district court once the plaintiff dismissed them. Here, as in *Cheng*, the parties stipulated to revive the dismissed claims in the event of a reversal on appeal. In essence, the claims remained in the district court pending a decision by this court. We see this as a clear, and impermissible, attempt to circumvent Rule 54(b)." *Dannenberg*, 16 F.3d at 1077.[4] The case for finding jurisdiction here is arguably even stronger than in *Robertson*. While in *Robertson* the dismissal was accomplished without the district court's approval, under Rule 41(a)(1), *Robertson*, 749 F.2d at 533, James's dismissal was pursuant to court order under Rule 41(a)(2). The district court's participation in the process is an additional factor alleviating concerns about a possible manipulation of the appellate process.

Our situation also differs from *Fletcher v. Gagosian*, 604 F.2d 637 (9th Cir.1979). In *Fletcher*, after the district court "categorically refused" to grant a Rule 54(b) severance, plaintiffs dismissed the remaining claims without informing the district court, filed a simultaneous appeal and, be-

---

**4.** Fed.R.Civ.P. 54(b) allows the district court to sever a final judgment with respect to particular claims (or parties) for an immediate appeal.

fore the appeal was even considered, "re-file[d] the dismissed portion as a separate lawsuit." *Id.* at 638–39. Not surprisingly, we found manipulation. Finding "nothing in th[e] record purporting to be a judgment and nothing indicating that the district court intended to have a judgment entered," we held that a party may not "convert[ ] what had been an unappealable order into an appealable order, without the district judge's participation and perhaps without his personal knowledge." *Id.* at 638. Our case presents none of the concerns identified in *Fletcher*. James sought the district court's permission to dismiss the remaining claims, accepted the court's condition that the result of discovery be available in any subsequent proceeding between the parties, and did not attempt to press the claims in a different federal lawsuit simultaneously with the appeal.[5]

Our case is even farther removed from two other cases discussed in *Dannenberg*, *Huey v. Teledyne, Inc.*, 608 F.2d 1234 (9th Cir.1979), and *Ash v. Cvetkov*, 739 F.2d 493 (9th Cir.1984). These cases involved, not final judgments severable for immediate appeal pursuant to Rule 54(b), but interlocutory orders—a denial of class certification, *Huey*, 608 F.2d at 1236, and an order quashing writs of execution, *Ash*, 739 F.2d at 495—that could be appealed only if certified by the district court under 28 U.S.C. § 1292(b) as raising an important and unsettled question of law whose disposition

will advance the ongoing proceedings. The appellant in those cases—the party objecting to the interlocutory order—simply refused to prosecute the case, which eventually resulted in a dismissal. On appeal from that dismissal, appellants sought to have us review the interlocutory orders in the course of the appeal.

This was unquestionably a manipulation of appellate process: "If a litigant could refuse to proceed whenever a trial judge ruled against him, wait for the court to enter a dismissal for failure to prosecute, and then obtain review of the judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened." *Huey*, 608 F.2d at 1239 (quoting *Sullivan v. Pac. Indem. Co.*, 566 F.2d 444, 445 (3d Cir.1977)). We reaffirmed this position in *Ash*, where we held that "the sufferance of dismissal without prejudice because of failure to prosecute is not to be employed as an avenue for reaching issues which are not subject to interlocutory appeal as of right." *Ash*, 739 F.2d at 497. *Huey* and *Ash*, like *Dannenberg* and *Fletcher*, turned on manipulation and are therefore inapposite.

■ Price Stern argues that James did engage in manipulation because she engineered an end-run around the procedures specified in Rule 54(b). This rule enables the district court to sever a partial final judgment for an immediate appeal.[6] Price

---

**5.** *Fletcher* itself drew this distinction, discussing the Seventh Circuit decision in *Division 241, Amalgamated Transit Union v. Suscy*, 538 F.2d 1264, 1266 (7th Cir.1976). *Suscy* allowed an appeal where, after the district court dismissed one of the claims, "the plaintiff moved for, and obtained, a dismissal of the remaining counts by the district judge." *Fletcher*, 604 F.2d at 639.

**6.** Some of our cases use the phrase "Rule 54(b) certification." *E.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir.2001); *Holley v. Crank*, 258 F.3d

1127, 1130 (9th Cir.2001); *Brookes v. Comm'r*, 163 F.3d 1124, 1129 (9th Cir.1998); *Int'l Techs. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1386 (9th Cir.1998); *Zucker v. Maxicare Health Plans, Inc.*, 14 F.3d 477, 483 (9th Cir.1994). This is a misnomer born of confusion between Rule 54(b) and 28 U.S.C. § 1292(b), only the latter of which requires a certification. The two procedures apply to different situations. *See generally* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2658.2, at 89–95 (1998) [hereinafter Wright & Miller]. Rule 54(b) applies where the dis-

Stern argues that, because James is really appealing the partial summary judgment, she may do so only if this judgment is issued pursuant to Rule 54(b).

There is no evidence, however, that James attempted to circumvent Rule 54(b), or that the final judgment issued by the district court undermines the Rule 54(b) procedures. The record shows that James requested—and the district court intended to grant—a final, appealable judgment. In her motion to dismiss, James stated that "[a] federal court trial on the few remaining pieces of artwork would not be an efficient use of time and resources, given the small amount of artwork actually involved," and that "[o]nce those claims are dismissed, a final judgment can be entered." Price Stern did not oppose this request, asking only to condition dismissal on the right to use the result of discovery in any subsequent proceeding. Responding to Price Stern, James repeated that "th[e] case is ripe for dismissal," and asked the district court to "enter judgment for defendants pursuant to Fed.R.Civ.P. 58."

James's reasons for seeking a dismissal of her remaining claims seem entirely legitimate. She presented them to the district court and Price Stern had an opportunity to argue that they were a subterfuge, but failed to do so. The district court must have been persuaded of the legitimacy of James's reasons because it granted the dismissal of the remaining claims, subject to the condition offered by Price Stern. By entering a final judgment under Rule 58 as to the claims under the

---

trict court has entered a final judgment as to particular claims or parties, yet that judgment is not immediately appealable because other issues in the case remain unresolved. Pursuant to Rule 54(b), the district court may sever this partial judgment for immediate appeal whenever it determines that there is no just reason for delay. A court of appeals may, of course, review such judgments for compliance with the requirements of finality, but accords a great deference to the district court. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797–98 (9th Cir.1991).

By contrast, section 1292(b) addresses the situation where a party wishes to appeal an interlocutory order, such as pertaining to discovery, *see Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 338–39 (9th Cir.1996), denying summary judgment, *Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir.2001), denying a motion to remand, *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1000 (9th Cir.2001), or decertifying a class, *Smith v. Univ. of Wash., Law School*, 233 F.3d 1188, 1192–93 (9th Cir. 2000). Normally, such interlocutory orders are not immediately appealable. In rare circumstances, the district court may approve an immediate appeal of such an order by certifying that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Even where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently. *See* 16 Wright, Miller & Cooper § 3929, at 363.

Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly. This explains the reasons for the specific form of the certification required of the district court and de novo review thereof by the court of appeals. *See, e.g., In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir.1982). By contrast, a Rule 54(b) severance is consistent with the final judgment rule because the judgment being severed is a final one, whose appeal is authorized by 28 U.S.C. § 1291. Referring to a Rule 54(b) severance order as a "certification" misleadingly brings to mind the kind of rigorous judgment embodied in the section 1292(b) certification process. In reality, issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances. *See, e.g., In re First T.D. & Inv., Inc.*, 253 F.3d 520, 531–33 (9th Cir.2001); *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir.1991).

1977–82 contracts, the district court made a determination that its adjudication of those claims was ripe for review; this is a judgment highly analogous to one the district court would have been required to make had James chosen not to dismiss the remaining claims. Indeed, Rule 58 specifically calls attention to the requirements of Rule 54(b), and we have no reason to doubt that the district court was mindful of the interplay between the two rules.

Our case therefore raises none of the concerns present in *Huey* and *Ash*, where appellants deliberately attempted to circumvent section 1292(b), or in *Fletcher*, where the appellant sought review despite the district court's express refusal to issue the judgment under Rule 54(b). Sending James back to the district court for a reissuance of the judgment pursuant to this rule would serve no useful purpose. In fact, it would be rather ironic to now ask the district court to certify, as Rule 54(b) requires, that "there is no just reason for delay" an appeal it authorized 24 months ago by entering a final judgment.

Our approach is consistent with that of other circuits. The Sixth Circuit held, in a situation indistinguishable from ours, that appellate jurisdiction exists where plaintiff, with the district court's permission, dismissed without prejudice the remaining claims in order to make the judgment appealable. *Hicks v. NLO, Inc.*, 825 F.2d 118, 120 (6th Cir.1987). *Hicks* interpreted *Fletcher* as we do today: Because the district court approved the dismissal, *Fletcher*'s concern that "permitting a plaintiff to appeal after a voluntary dismissal about which the district judge knows nothing prevents the judge from having the opportunity to review in the context of the total litigation the earlier order dismissing part of the complaint" was absent. *Hicks*, 825

F.2d at 120 (discussing *Fletcher v. Gagosian*, 604 F.2d 637 (9th Cir.1979)). When "the district judge signed the order of dismissal, the judge was aware that all claims were now disposed of." *Id.*

The Eighth Circuit has reached a similar conclusion where "[f]ollowing the granting of the motion for partial summary judgment, the court, on the parties' joint motion to dismiss ..., dismissed without prejudice the remainder of the case. The effect of that action was to make the judgment granting partial summary judgment a final judgment for purposes of appeal, even though the district court had not so certified under Fed. R.Civ.P. 54(b)." *Chrysler Motors Corp. v. Thomas Auto Co.*, 939 F.2d 538, 540 (8th Cir.1991) (citation omitted).[7]

The Seventh Circuit has taken a similar view. *See Division 241 Amalgamated Transit Union v. Suscy*, 538 F.2d 1264, 1266 & n. 1 (7th Cir.1976) (allowing an appeal where the dismissal of the remaining counts was made with the permission of the district judge). Although the Seventh Circuit has, on occasion, disallowed an appeal after a dismissal without prejudice, it has done so only where the record revealed that the district court and the parties have schemed to create jurisdiction over an essentially interlocutory appeal. *See Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1435 (7th Cir.1992) ("What [the district court] did for the parties was to dismiss the good counts with leave to later reinstate them so that the counts dismissed for cause could be appealed. That did not terminate the litigation and no one contemplated that it would. It was not a final order.") (citation omitted); *see also United States v. Kaufmann*, 985 F.2d 884, 890–91 (7th Cir.1993) ("*Horwitz* did not

---

**7.** While not having addressed the issue explicitly, the First Circuit has also allowed an appeal in similar circumstances. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1250 (1st Cir. 1996).

announce a principle that dismissal of some claims without prejudice deprives a judgment on the merits of all other claims of finality for purposes of appeal. Rather, the court concentrated on the intent of the district court and the parties to bypass the rules.").

Although there is no unanimity on this issue, *see, e.g., State Treasurer v. Barry,* 168 F.3d 8 (11th Cir.1999) (holding that appellate jurisdiction is lacking where a party dismissed the remaining claims without prejudice); *Chappelle v. Beacon Communications Corp.,* 84 F.3d 652, 653–54 (2d Cir.1996) (same); *Cook v. Rocky Mountain Bank Note Co.,* 974 F.2d 147, 148 (10th Cir.1992) (same); *Ryan v. Occidental Petroleum,* 577 F.2d 298 (5th Cir. 1978) (same), we find the reasoning of the Sixth, Seventh and Eight Circuits more persuasive.[8]

■ We therefore hold that when a party that has suffered an adverse partial judgment subsequently dismisses remaining claims without prejudice with the approval of the district court, and the record reveals no evidence of intent to manipulate our appellate jurisdiction, the judgment entered after the district court grants the motion to dismiss is final and appealable under 28 U.S.C. § 1291.

In a separately filed memorandum disposition, we affirm the district court's judgment on the merits.

**AFFIRMED.**

---

8. Even circuits that adhere to the purportedly bright-line rule of disallowing appeals if some claims are dismissed without prejudice are ultimately forced to graft numerous exceptions onto this rule, if not depart from it outright. *See, e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1265–66 (11th Cir.1999) (allowing an appeal where the dismissal without prejudice precedes the judgment); *Chappelle,* 84 F.3d at 653–54 (enumerating the Second Circuit exceptions to the rule); *Kirkland v. Nat'l Mortgage Network, Inc.,* 884 F.2d 1367, 1369–70 (11th Cir.1989) (allowing an appeal where the appellant had opposed the appellee's non-prejudicial dismissal of the remaining claims); *Studstill v. Borg Warner Leasing,* 806 F.2d 1005, 1007–08 (11th Cir.1986) (allowing an appeal after a voluntary dismissal without prejudice, and noting that although it will not review the dismissed claims, the plaintiff may be free to refile these claims in the district court); *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604–05 (5th Cir.1976) (allowing an appeal from a voluntary dismissal without prejudice where the district judge subjected the dismissal to a number of conditions). The rule adopted by these circuits is also not without its critics. *See, e.g., Barry,* 168 F.3d at 16–21 (Cox, J., concurring) (arguing that the rule is ultimately—and deeply—misguided and should be overruled).