AMERICAN STATES INSURANCE COMPANY, and American Economy Insurance Company, Plaintiffs–Appellees,

v.

DASTAR CORPORATION, an Oregon corporation, Entertainment Distributing, an Oregon corporation, and Marathon Music & Video, an Oregon corporation, Defendants–Appellants.

No. 01–35412.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 2002.

Filed Jan. 22, 2003.

David A. Gerber, D. Gerber Law Offices, Oxnard, CA, for defendants-appellants Dastar Corporation, Entertainment Distributing, and Marathon Music & Video.

Lisa E. Lear & Beth R. Skillern, Bullivant, Houser, Baily PC, Portland, OR, for plaintiffs-appellees American States Insurance Company and American Economy Insurance Company.

Before FERGUSON, W. FLETCHER, Circuit Judges, and KING,* District Judge.

## OPINION

KING, District Judge.

Dastar Corporation, Entertainment Distributing, and Marathon Music & Video (collectively "Dastar") appeal the district court's grant of partial summary judgment in favor of American States Insurance

* The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

Company and American Economy Insurance Company (collectively "American") on the sole issue of whether American owed Dastar a duty to defend in a separate action. Because the parties have engaged in manipulation to manufacture appellate jurisdiction after the district court's grant of partial summary judgment, we **DISMISS** the appeal for lack of appellate jurisdiction.

## I. BACKGROUND

Dastar was sued by Twentieth Century Fox Film Corp, SFM Entertainment and New Line Home Video, Inc. (collectively "Claimants") for copyright infringement, violation of the Lanham Act, and for violations of California Business and Professions Code section 17200. On May 12, 1999, Dastar tendered the claim to American as "advertising injuries" covered by insurance policies issued by American. On June 30, 1999, American denied Dastar's tender because it concluded that the Claimants' First Amended Complaint did not allege "advertising injuries" covered by the policies.

On March 7, 2000, American filed a complaint in the United States District Court for the District of Oregon, seeking a declaration on the duties to defend and to indemnify. Dastar answered the complaint and filed a counterclaim alleging breach of the duties to defend and to indemnify. On May 24, 2000, Dastar moved for partial summary judgment solely on the duty to defend. On June 6, 2000, American filed a cross-motion on the same issue. Neither summary judgment motion addressed the duty to indemnify. On July 27, 2000, the district court granted partial summary judgment in American's favor.

After the district court's order, the parties lodged a stipulation permitting Dastar to file an amended counterclaim, which the district court approved. On March 2, 2001, Dastar filed its amended answer and counterclaim, eliminating its counterclaims on the duty to indemnify. On March 20, 2001, the parties lodged a stipulation to dismiss without prejudice American's declaratory relief claim on the duty to indemnify. On March 27, 2001, the district court approved the stipulation dismissing American's indemnity claim, and issued a Declaratory Judgment. On April 13, 2001, Dastar filed its Notice of Appeal.

## II. ANALYSIS

■ Parties may only appeal "final decisions of the district courts." 28 U.S.C. § 1291. Final decisions " 'end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment.' " *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1074 (9th Cir. 1994) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). The final judgment rule promotes judicial efficiency, avoids multiplicity of litigation and minimizes delay by " 'forbid[ding] piecemeal disposition on appeal of what for practical purposes is a single controversy[.]' " *Dannenberg*, 16 F.3d at 1074 (quoting *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940)).

■ An order granting partial summary judgment is usually not an appealable final order under 28 U.S.C. § 1291 because it does not dispose of all of the claims. *Cheng v. Comm'r*, 878 F.2d 306, 310 (9th Cir.1989). However, under a pragmatic approach, we consider events subsequent to non-final orders to determine whether they create sufficient finality. *Dannenberg*, 16 F.3d at 1075 ("[J]udgments whose finality would normally depend upon a Rule 54(b) certificate may be treated as final and appealable under § 1291 if remaining claims subse-

quently have been finalized."). As we recently explained,

> when a party that has suffered an adverse partial judgment subsequently dismisses remaining claims without prejudice with the approval of the district court, and the record reveals no evidence of intent to manipulate our appellate jurisdiction, the judgment entered after the district court grants the motion to dismiss is final and appealable under 28 U.S.C. § 1291.

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1070 (9th Cir.2002).

 A significant concern in assessing finality is whether the parties have attempted to manipulate our appellate jurisdiction. *See James*, 283 F.3d at 1066 ("We have always regarded evidence of such manipulation as the necessary condition for disallowing an appeal where a party dismissed its claims without prejudice."); *see also Dannenberg*, 16 F.3d at 1076. A party may not engage in manipulation either to create appellate jurisdiction or prevent it. *Compare Cheng v. Comm'r*, 878 F.2d 306 (9th Cir.1989) (rejecting parties' attempt to create appellate jurisdiction by manipulation) *with Local Motion v. Niescher*, 105 F.3d 1278, 1278 (9th Cir. 1997) (rejecting prevailing party's attempt to avoid appellate jurisdiction by dismissing remaining claims without prejudice to create appearance of non-finality).

Manipulation of jurisdiction has arisen in several different contexts. In *Huey v. Teledyne*, 608 F.2d 1234 (9th Cir.1979), and *Ash v. Cvetkov*, 739 F.2d 493 (9th Cir. 1984), the parties attempted to create appellate jurisdiction over interlocutory orders by provoking the district court to dismiss their actions for failure to prosecute. *See* 608 F.2d at 1239, 739 F.2d at 498. The parties' acts were objectionable because they resulted in piecemeal litigation, rewarded dilatory practices, and undermined the district court's ability to dispose of cases in an orderly and expeditious manner. *Id.*

 Agreements to dismiss claims without prejudice also suggest manipulation. In *Cheng*, the parties stipulated that the plaintiff, who lost a partial summary judgment motion, would dismiss his remaining claims. The stipulation permitted the plaintiff to present additional evidence and arguments to the district court on the dismissed issues if the decision were reversed on appeal. *Cheng*, 878 F.2d at 309. We held that the stipulation demonstrated manipulation because: (1) the plaintiff's ability to resurrect the claims if he prevailed on appeal meant that the district court had not truly disposed of all the claims; (2) deciding the appeal in stages could result in unnecessary decisions that might become moot upon further litigation in the district court; and (3) a party with "several separate claims could conceivably appeal as many times as he has claims if he is willing to stipulate to the dismissal of the claims ... the court has not yet considered." *Id.* at 310–11.

 Manipulation is also apparent when the parties agree to waive the statute of limitations for dismissed claims. *See Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1074 (9th Cir.1994). An agreement to waive the statute of limitations and remove potential barriers from refiling the claims is manipulative because "litigants should not be able to avoid the final judgment rule without fully relinquishing the ability to further litigate unresolved claims [.]" *Id.* at 1077.

In this case, both parties have attempted to create appellate jurisdiction through manipulation. First, the record shows that the parties discussed their attempts to create appellate jurisdiction. A joint status report stated that they "agreed to

allow judgment to be entered based on the summary judgment rulings by the Court so the duty to defend issue[could] be appealed." Additionally, correspondence between the parties indicates that they attempted to structure their stipulations to create jurisdiction.[1]

Second, the fact that the parties dismissed the remaining claims in two steps also reveals intent to manipulate jurisdiction. Some cases before *James* used language that could be read to suggest that a losing party, but not a winning one, is prohibited from dismissing remaining claims without prejudice to create finality. *See, e.g., Local Motion*, 105 F.3d at 1279 ("a *losing* party may not 'manufacture finality' by dismissing his or her remaining claims without prejudice.") (emphasis in original); *United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 918 n. 1 (9th Cir.1998) ("Here, Aetna, a prevailing party, dismissed its remaining claim in an effort to facilitate an appeal by Mydrin. This is not manipulation of the appellate process.").[2] But we do not read case law before *James* to create such a distinction. Those cases focused on whether there was manipulation to manufacture jurisdiction, not whether the prevailing or the losing party dismissed the remaining claims. Indeed, in *Local Motion*, we specifically declined to permit a winning party to thwart jurisdiction by dismissing the remaining claims without prejudice. *See* 105 F.3d at 1279.

The language in cases prior to *James* reveals the parties' attempt to manipulate jurisdiction in light of what they apparently thought was the law before *James*. Seizing upon the distinction between dismissal by a prevailing versus a losing party, Dastar and American attempted to avoid the appearance that the "losing" party dismissed the remaining claim without prejudice by dismissing the indemnity claim and counterclaim in two steps.[3] First, the parties stipulated to allow Dastar to file an amended counterclaim, which eliminated all references to the breach of the duty to indemnify and effectively dismissed that claim without prejudice. Second, the parties stipulated to permit American, the prevailing party, to dismiss its claims on the duty to indemnify without prejudice. Therefore, through this two-step process, the parties were able to create the appearance that Dastar, the losing

---

**1.** American's letter to Dastar dated March 29, 2001 states:

> Our appellate attorneys have reviewed these documents in light of what we want to accomplish, that is, an appeal of the duty to defend issue and a dismissal without prejudice of the issue relating to the insurance companies' duty to indemnify. They have some concern that the Ninth Circuit may consider our efforts as an attempt to obtain an interlocutory appeal and send the case back to federal district court, where we presume it would be stayed. However, they agree that these drafts are probably the best effort we can make to have an appealable judgment entered.

**2.** The dissent misplaces its reliance on *United National* which discussed appellate jurisdiction in a conclusory fashion in a footnote. There, the court found no evidence of manip-

ulation by reason of Aetna's dismissal of its remaining claim. This finding is not surprising in light of the procedural history of the case where the parties were appealing the district court's order which had directly violated the Ninth Circuit's mandate from a previous appeal. 141 F.3d at 918. By contrast, in this case we have evidence of manipulation, including a letter demonstrating the parties' desire to create appellate jurisdiction. *See supra* n. 1. The parties also admitted at oral argument that they attempted to engineer appellate jurisdiction. *See infra* note 5 and accompanying text. Thus the footnote in *United National* is distinguishable and not controlling.

**3.** *James*, which emphasized the importance of evidence of manipulation, was decided after the parties engineered the two-step dismissal of the remaining claims.

party, had not "dismissed" any remaining claims, but that only American, the prevailing party, had done so.

█ While the stipulations in this case are not as patently manipulative as those in *Cheng* and *Dannenberg* because Dastar and American did not explicitly agree to revive the claims or waive the statute of limitations, the absence of these terms does not preclude the conclusion that the parties attempted to manipulate jurisdiction. In *Cheng* and *Dannenberg,* the stipulations to dismiss without prejudice were manipulative because they permitted the re-institution of claims if the district courts were reversed on appeal. *See Cheng,* 878 F.2d at 308; *Dannenberg,* 16 F.3d at 1074. Thus, "[i]n essence, the claims remained in the district court pending a decision by this court." *Dannenberg,* 16 F.3d at 1077; *see also James,* 283 F.3d at 1066 (noting that the stipulations in *Cheng* and *Dannenberg* "kept the dismissed claims on ice while appeal was taken from a partial judgment, circumventing the final judgment rule and arrogating to the parties the gate-keeping role of the district court"). However, when the parties do not toll the limitations period, a "plaintiff assumes the risk [that] by the time the case returns to district court, the claim will be barred by the statute of limitations or laches." *James,* 283 F.3d at 1066. Such risk-taking weighs against a finding of manipulation.

█ Here there was little need to stipulate to waive the statute of limitations because the limitations period is unlikely to expire during this appeal. Under Ore-

gon law, the statute of limitations for breach of contract is six years. Or.Rev. Stat. § 12.080 (2001)[4]; *see also Vega v. Farmers Ins. Co.,* 323 Or. 291, 296, 918 P.2d 95, 98 (1996). A breach of contract in the insurance context does not accrue until the denial of a claim. *See Vega,* 323 Or. at 296, 918 P.2d at 98. As Dastar tendered the claim in 1999, Oregon law minimized the need for the parties to waive the statute of limitations, as it could not run before 2005. As a result, the lack of a stipulation including a waiver of the statute of limitations in this case does not negate the other indicia of manipulation because Dastar is not taking any real risk that the indemnity claim would be barred prior to the resolution of this appeal.

Finally, the parties' statements during oral argument support our view that they engaged in manipulation. Both parties conceded that they manipulated jurisdiction, even though each party claimed it only acted at the urging of the other party.[5] Thus, we find the parties have attempted to manufacture appellate jurisdiction.

The presence of manipulation is one important factor distinguishing the present case from *James v. Price Stern Sloan, Inc.,* 283 F.3d 1064 (9th Cir.2002). In *James,* the plaintiff sought and obtained permission to dismiss her remaining claims after the district court granted a motion to dismiss. There was sufficient finality because there did not appear to be any evidence of manipulation in the record, the

---

**4.** The applicable subsection of section 12.080 states that "[a]n action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070, 12.110 and 12.135 and except as otherwise provided in ORS 72.7250 ... shall be commenced within six years." The sections referenced are not applicable to this case.

**5.** Counsel noted that they admit to manipulation provided that term does not carry any negative connotation. Dastar's counsel accepted the characterization that the parties sought to "engineer" jurisdiction to accelerate the appellate process.

reason for dismissal appeared legitimate,[6] and the parties did not stipulate to waive the statute of limitations based on the outcome of the appeal.[7] *Id.* at 1066–69. As previously explained, in the present case there is clear evidence of the parties' attempt to manipulate appellate jurisdiction, and the parties did not need a specific stipulation to revive their indemnity claims.

Moreover, the district court's involvement in the plaintiff's Rule 41 motion also distinguishes *James* from the present case. We explained in *James* that the district court's participation in the dismissal indicated that it considered the appropriateness of the dismissal without prejudice. *Id.* at 1066–69. Because the plaintiff filed a motion to dismiss, the district court had to specifically decide the merits and legitimacy of plaintiff's assertions. Therefore, in that situation it may be more likely that the district court would consider the implications of Rule 54(b), especially as it possessed the authority to deny the relief if it did not intend the order to be immediately appealable.

Unlike *James*, the district court in this action did not meaningfully participate in the dismissal of all of the remaining claims after granting partial summary judgment.

Under Rule 15(a), except in circumstances not applicable here, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party...." As Dastar obtained American's consent to amend the counterclaim and eliminate indemnification issues, Dastar could amend its counterclaim without the district court's considered participation. Similarly, the parties did not need the district court's consent to stipulate to dismiss American's claim concerning the duty to indemnify. *See* Fed.R.Civ.P. 15(a).[8] Although the district court "approved" the stipulations to amend and dismiss, such approval cannot be said to involve meaningful consideration or participation by the district court inasmuch as the parties were entitled to do so without leave of the court.[9] *See infra*, at n. 7; *id.*

Additionally, *James* should not be read to imply that any entry of an order by a district court after a partial summary judgment is always tantamount to a Rule 54(b) certification. Rather, *James* represents an exception to the general rule that "[i]n the absence of [a Rule 54] determination and direction [from the court of an entry of a final judgment], any order or other form of decision, however designat-

---

6. In *James,* the plaintiff sued for compensation of lost artwork. 283 F.3d at 1065. The partial summary judgment addressed claims for contracts of artwork between 1977 and 1982, but did not address claims related to contracts after 1982. *Id.* Plaintiff dismissed her remaining claims because litigating them in federal court "would not be an efficient use of time and resources, given the small amount of artwork actually involved...." *Id.* at 1068.

7. Although the parties did not stipulate to dismissal, the defendant did not oppose plaintiff's motion and only asked the district court to condition dismissal on the right to use existing discovery in future proceedings. *James,* 283 F.3d at 1068.

8. Neither the stipulation nor the district court's order dismissing American's indemnity claim without prejudice reference the Federal Rules of Civil Procedure. Rule 15(a) would be the appropriate procedural mechanism because American only agreed to dismiss the duty to indemnify, not its duty to defend claim. *See Gen. Signal Corp. v. MCI Telecomms. Corp.,* 66 F.3d 1500, 1513 (9th Cir.1995) (explaining that "Rule 15, not Rule 41, governs ... when a party dismisses some, but not all, of its claims").

9. This conclusion is not an insult to the district court, as the dissent suggests. Rather it recognizes the reality of the district court's role when the parties stipulate to dismissal of the remaining claims.

ed, which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims[.]" Fed.R.Civ.P. 54(b). Any other interpretation of *James* would undermine Rule 54(b) and add uncertainty to the final judgment rule. Interpreting a judgment as a Rule 54(b) determination without the required findings would effectively read out those requirements from Rule 54(b). In turn, this practice would create the same concerns raised in *Fletcher v. Gagosian*, 604 F.2d 637, 639 (9th Cir.1979), that permitting jurisdiction without a clear indication of finality would confuse the parties and the public, possibly leading to premature or untimely appeals, as the case may be.

While the district court here issued the declaratory judgment knowing that the parties stipulated to amend the counterclaim and to dismiss American's remaining claims, thereby eliminating the remaining indemnity claims, the district court's entry of declaratory judgment did not imply its intent "to grant—a final appealable judgment." *James,* 283 F.3d at 1068 (stating that the district court must have issued the Rule 41(a) dismissal after being "persuaded of the legitimacy of [plaintiff's] reasons because it granted the dismissal of the remaining claims subject to the conditions offered by [the defendant]"). Once the parties eliminated the indemnity claims, without the participation of the district court and the need for the district court's Rule 54(b) judgment, the district judge had no ability or justification to refuse to issue a judgment on the duty to defend.

In fact, the active involvement of the district court, such as through the parties' request for a Rule 54(b) judgment, would have empowered the district court to manage the development of this action, thereby facilitating efficiency, avoiding this premature appeal, and eliminating many of the concerns raised by the dissent. The dis-

sent is concerned that because the duty to defend is completely independent of the duty to indemnify, the duty to defend should be resolved without awaiting the resolution of indemnification issue because prompt resolution of the duty to defend is important to an insured's rights, and an appeal on the indemnification issue may never arise. This is precisely a decision that should be made by the district court and is contemplated by Rule 54(b). *See Adonican v. City of L.A.,* 297 F.3d 1106, 1107–08 (9th Cir.2002) ("The parties wanted a ruling on some, but not all, of the Appellant's claims before proceeding with the rest of the case. Federal Rule of Civil Procedure 54(b) states that the trial court must determine whether a judgment that disposes of less than all claims and all parties should be considered final. The parties here have attempted to usurp the trial court's role."); *Franklin v. Fox,* 312 F.3d 423, 431 & nn. 2–3 (9th Cir.2002) (finding appellate jurisdiction even though the district court did not grant summary judgment on all of defendant's claims because the court entered judgment pursuant to Rule 54(b)).

 Moreover, while the dissent does raise certain practical concerns, those concerns do not create finality in this case. *See, e.g.,* discussion *infra,* at pp. 690–91. Other procedural mechanisms, such as Rule 54(b), already exist to ensure that an appeal of a non-final judgment may be obtained in appropriate circumstances. In the present case, if the parties had sought a Rule 54(b) judgment and the district court had concluded that a prompt resolution of the duty to defend issue was essential and efficient, it could have issued a judgment pursuant to Rule 54(b). Thus, a Rule 54(b) determination eliminates improper appeals of non-final judgments while permitting prompt appeals when necessary. By circumventing the district

court's involvement, even for practical considerations, parties do not make judgments final. They merely eliminate the district court's gate-keeping role and unnecessarily increase our own tasks.

In urging us to find appellate jurisdiction, American relies upon *Horn v. Berdon, Inc.,* 938 F.2d 125, 126 n. 1 (9th Cir.1991), in support of the position that the dismissal of the indemnity claim creates sufficient finality for appellate jurisdiction. *Horn* is inapposite under our facts but exemplifies a pragmatic evaluation of finality. In *Horn,* the plaintiffs brought suit alleging violations of ERISA. The defendant counterclaimed for indemnification. The court granted summary judgment in the defendant's favor, which disposed of plaintiffs' claims, but not the counterclaim. Although the defendant dismissed the counterclaim for indemnification with the understanding that it could revive it if unsuccessful, the indemnification claim was entirely dependant upon the plaintiffs' claim. *Id.* Once the district court granted summary judgment in defendant's favor, there were "no claims for the district court to hear...." *Id.* at 126 n. 1; *see also Dannenberg,* 16 F.3d at 1076 (distinguishing *Horn* because the claims in that case were "solely for indemnification[and] entirely dependent upon plaintiff's success in the underlying action"); *cf. Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130, 1137 (9th Cir.2001).[10]

[10] In contrast, under Oregon insurance law the duty to indemnity is not completely dependant upon the duty to defend. *See Ledford v. Gutoski,* 319 Or. 397, 403, 877 P.2d 80, 84 (1994). ("The duty to indemnify is independent of the duty to defend."). Liability for indemnity, unlike liability under the duty to defend, derives from factual determinations separate from the allegations in the complaint. As a result, American could still have a duty to indemnify even if it did not have a duty to defend.

American argues that the indemnity claim cannot be determined until the underlying litigation is completed, asserting that in a practical sense there are no claims for the district court to adjudicate at this time. In support of this argument, American relies upon *North Pacific Insurance Company v. Wilson's Distributing Service, Inc.,* 138 Or.App. 166, 908 P.2d 827 (1995), claiming that it prevents the adjudication of the indemnification claims until the underlying lawsuit has been finalized. The court in *North Pacific* held that a trial court should stay a determination of the duty to indemnify prior to the resolution of the underlying case when an insurer attempts to place the insured "in the conflictive position of being required to abandon [its] denial of liability" in order to obtain coverage. 138 Or.App. at 175, 908 P.2d at 832 (explaining that the insurer's actions would force the insured to argue that it caused the pollution in order to come within the exception to the policy

---

**10.** In *Regula,* we permitted the appeal of a denial of summary judgment even though such a decision is ordinarily not appealable. *See Regula,* 266 F.3d at 1137 (*citing Cal. v. Campbell,* 138 F.3d 784, 786 (9th Cir.1998)). In *Regula,* the plaintiff brought a claim under ERISA for the denial of long-term disability benefits. As the case involved a review of the administrative record, there were no material facts to be decided, and the court's legal determinations effectively ended the case.

Therefore, after the judge denied summary judgment, the parties stipulated to judgment, which the district court finalized by issuing a judgment. Appellate jurisdiction was proper under those circumstances because the denial of summary judgment "conclusively decided the legal and factual issues in the case.... leaving no undecided issues that could subject this court to the threat of piecemeal adjudication through multiple appeals." *Id.*

exclusion, which conflicted with its denial of liability in the underlying action).

However, *North Pacific* does not preclude the adjudication of the indemnity claims under the circumstances in this case. The issue of whether the publishing exclusion precludes indemnity does not relate to the controverted issues in the underlying litigation. Therefore, American is not putting Dastar in the untenable position of having to prove its liability in the declaratory relief action, while taking the opposite e publishing exclusion did not apply to relieve American from a duty to defend based on the facts alleged in the underlying complaint, that conclusion is not necessarily determinative of the indemnity claim. Upon discovery of facts different from those alleged in the underlying complaint, the exclusion may apply. The district court, if it so chose, could decide that issue without awaiting the resolution of the underlying case.[11] Therefore, under Oregon law, American was not precluded from litigating the indemnity issue prior to the resolution of the underlying action.

Additionally, despite the fact that the parties might have been able to bring the claims for the duty to defend separate from their indemnity claims, the parties chose to bring the claims together. Consequently, the indemnity claims were part of the action, we cannot rely upon the fiction that they might have been brought separately, and we cannot ignore their impact on appellate jurisdiction.

Therefore, even though the duty to defend and the duty to indemnity are independent of one another, because American can litigate the indemnity issue without awaiting the resolution of the underlying action, hearing this appeal at this time would undermine the final judgment rule. *See Dannenberg*, 16 F.3d at 1076. In this case, there is a greater risk of piece-meal litigation than in previous cases. Unlike *Cheng, Dannenberg* and *Horn*, where the dismissed claims would only be revived if the district court was reversed, the indemnity claim in this action will survive regardless of the outcome of this appeal. It is likely that the parties will appeal any subsequent decision on the duty to indemnify claim. Any appeal concerning indemnity will involve the same insurance policies and will likely require similar contract interpretation, even though the facts may be different. Hearing the appeal on the duty to defend at this time will defeat judicial efficiency by requiring a future panel to reacquire familiarity with this case in order to resolve the duty to indemnify claim.

Overall, the parties appear to have colluded to manufacture appellate jurisdiction by dismissing their indemnity claims after the district court's grant of partial summary judgment. Moreover, the parties appear ready to pursue those claims gardless of the outcome of this appeal, undermining the policies upholding the final judgment rule. As noted in *Cheng* and *Dannenberg*, and *Adonican v. City of Los Angeles*, 297 F.3d 1106, 1108 (9th Cir.

11. American argues that *North Pacific* supports the proposition that the district court must stay the indemnity claims because the evidence developed to show no duty to indemnify might be used to negate a duty to defend. This aspect of *North Pacific* is not applicable to our facts. First, American did not attempt to negate the duty to defend by arguing it had no duty to indemnify. Second, neither party requested the district court to stay the duty to defend or the indemnity claims. Third, once the district court granted summary judgment in American's favor, the concern raised in *North Pacific* was eliminated. As the court resolved the duty to defend claim, American had no need to use the facts developed when litigating the indemnity claim to negate the duty to defend.

2002), the parties can cure this jurisdictional defect on appeal by (1) dismissing with prejudice the claims on which the district court had not ruled, or (2) obtaining a Rule 54(b) judgment from the district court. Alternatively, the parties can petition the district court to re-open the judgment and amend their pleadings to include their indemnity claims. *See Cheng,* 878 F.2d at 311; *Dannenberg,* 16 F.3d at 1077; *Adonican,* 297 F.3d at 1108. After the district court has ruled on those claims, there will be an appealable final judgment.

Therefore, this appeal is **DISMISSED** for lack of appellate jurisdiction.

FERGUSON, Circuit Judge, dissenting:

I respectfully dissent. In holding that the parties engaged in manipulation of our jurisdiction, the majority fails to recognize the difference in litigating the duty to defend and the duty to indemnify. It also fashions a new rule of law which requires that before a voluntary dismissal of independent claims can be approved, District Courts must certify the appealability of remaining claims pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. In the process, the majority implies that trial judges who approve the dismissal of a claim without prejudice in order to permit the litigants to proceed on an independent claim actually facilitate manipulation. This is simply not true. When lawyers and trial judges agree to dismiss independent, unripe claims, they are faithful to the administration of justice, preserving the resources of the courts as well as clients. By focusing on manipulation as opposed to the intent underlying the final judgment rule, the majority misses the forest for the trees. As a result, they compel an outcome that is neither efficient nor just.

As the majority correctly observes, the purpose of the final judgment rule is to "prevent[ ] the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle,* 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). What the majority ignores is that the inquiry into whether a decision is final requires "evaluation of the competing considerations underlying all questions of finality— 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " *Id.* (quoting *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950)). Our own pragmatic approach to the issue of finality recognizes these competing considerations by allowing parties to voluntarily dismiss claims without prejudice prior to appeal, absent a finding of manipulation. *James v. Price Stern,* 283 F.3d 1064, 1066 (9th Cir.2002). Thus, the purpose of such a dismissal is to support efficiency, not undermine it. In finding that the dismissal in the instant case was manipulative, the majority makes three wrong turns: 1) they misconstrue the standard for manipulation as set out in our previous cases, 2) they fail to recognize the legal and practical significance of the difference between interdependent and independent claims, and 3) they invent a rule of law that fails to accord sufficient discretion to the District Court, the party in the best position to determine if there has been manipulation.

Our prior decisions have found manipulation only when there was explicit evidence of the parties' intent to evade the finality requirement, such as a waiver of the statute of limitations, *James,* 283 F.3d at 1066; *Dannenberg v. Software Toolworks, Inc.,* 16 F.3d 1073, 1074 (9th Cir. 1994), an express agreement that the dismissed claims would be revived in the

event of a successful appeal, *Dannenberg,* 16 F.3d at 1077; *Cheng v. Comm'r,* 878 F.2d 306, 309–10 (9th Cir.1989), or circumvention of the District Court's power to approve the voluntary dismissal, *Fletcher v. Gagosian,* 604 F.2d 637, 638–39 (9th Cir.1979). In the instant case, none of these express indicia are present: the parties did not agree to waive the statute of limitations, made no explicit agreement to revive the indemnification claim, and sought and received approval from the District Court for both their amended counterclaims and the stipulated dismissal.

More importantly, by straining to find manipulation, the majority misses the relevant point: compelling the parties to litigate the duty to defend and duty to indemnify claims together will do nothing to prevent duplicative litigation or piecemeal appeals because the claims do not involve "for practical purposes [ ] a single controversy." *Dannenberg,* 16 F.3d at 1074 (quoting *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940)). In each of the cases cited by the majority in support of its manipulation finding the claims at issue were interdependent.[1] In *Cheng,* the parties sought review of a decision relating to some, but not all, of allegedly impermissible tax deductions, *Cheng,* 878 F.2d at 308, while in *Dannenberg,* the parties sought review of a series of claims based on the same set of facts as their dismissed federal claim. 16 F.3d at 1073. Similarly, in *Local Motion v. Niescher,* the dismissed claims were based on the same contract and alleged violations of contract as the appealed claim. 105 F.3d 1278, 1279 (9th Cir.1997).

In contrast, in the two cases in which we did not find manipulation, the claims were independent. In *James,* the claim on appeal involved a contract governing the ownership of a group of paintings, while the dismissed claim involved a different contract for a separate set of illustrations, with distinct questions of law and distinct defenses. 283 F.3d at 1065. In *United Nat'l Ins. Co. v. R & D Latex Corp.,* the court held that the parties could agree to dismiss a claim for reimbursement of defense costs "to facilitate an appeal" on duty to defend and indemnify issues, without finding any manipulation. 141 F.3d 916, 918 n. 1 (9th Cir.1998).

Under Oregon law, the duty to defend and the duty to indemnify are akin to the claims in *James* and *R & D Latex,* requiring distinct legal and factual analyses. While a court's inquiry into a duty to defend claim looks only at the facts as alleged in the complaint, the duty to indemnify assessment requires a court to consider if facts actually proved in the underlying litigation demonstrate a right to coverage. *Northwest Pump v. American States Ins. Co.,* 144 Or.App. 222, 925 P.2d 1241, 1243 (1996). The breach of one duty does not imply a breach of the other, nor does the establishment of one duty affect a finding regarding the other. *Id.* Thus, a separate appeal of the duty to indemnify issue would not, as the majority states, necessarily require that the court refamiliarize itself with the facts or law of the case, because it would raise new issues grounded in an independent set of facts.

Moreover, duty to defend and duty to indemnify claims arise and ripen at different points in the dispute between the parties, thus raising different concerns with regard to efficiency and litigation strategy. The duty to defend arises upon the initial filing of a complaint against the insured,

---

1. Our decisions in *Huey* and *Ash* both involved attempted appeals of interlocutory orders and thus are not directly on point.

creating an immediate case or controversy to determine whether or not the terms of the policy create a duty to indemnify. *Ledford v. Gutoski,* 319 Or. 397, 877 P.2d 80, 82 (1994). In contrast, the duty to indemnify remains speculative until the underlying proceeding against the insured has progressed sufficiently to settle the relevant liability issues. *See Travelers Prop. Cas. Corp. v. Winterthur Int'l,* No. 02–Civ.–2406, 2002 WL 1391920, at *6, 2002 U.S. Dist. LEXIS 11342, at *18 (S.D.N.Y. June 25, 2002) (reasoning that unlike the duty to defend, a declaratory judgment action on the duty to indemnify is not "a justiciable and ripe controversy" until liability is established and therefore "dismissal of the complaint without prejudice is the correct disposition of the action."). As competent trial lawyers understand, even assuming facts could be proven establishing a duty to defend, a variety of events could occur after the filing of the complaint which would preclude indemnification, including collusion between the litigant parties or bribery of witnesses. Intelligent lawyering, not manipulation, would induce counsel to refrain from litigating the indemnification issue until after the underlying action is concluded.

Precisely because the claims are being developed in an underlying action against the insured, however, the insured requires an immediate determination of the duty to defend issue. *See Lockwood Int'l, B.V. v. Volm Bag Co.,* 273 F.3d 741, 746 (7th Cir.2001) ("The insured needs a defense before he knows whether the claim that has been made against him is covered by the policy."). Because the dismissal of the duty to defend claim would force the parties to await the outcome of the underlying litigation, even if it turns out there is no indemnification claim to address, it is fatal to the parties' legitimate need for prompt review and contrary to the purposes underlying the final judgment rule.[2] *See Eisen,* 417 U.S. at 170, 94 S.Ct. 2140; *Dannenberg,* 16 F.3d at 1076.

The majority shrugs off the District Court's participation in the process based on the fact that the District Court was not *required* to grant its permission for the voluntary dismissal. In doing so, it fails to see that the District Court's voluntary dismissal of the indemnity issue was a legitimate discretionary decision. Unlike the majority, the District Court of the District of Oregon understood that, under Oregon Law, the duty to defend and the duty to indemnify are separate and distinct causes of action. It understood that the failure to dismiss would burden the court's docket by allowing the case to linger until a decision in the underlying lawsuit eventually finalized the claims. Understanding these things, the District Court legitimately exercised its discretion to permit a judgment on the merits of the duty to defend claim. The majority's assertion that the District Court's decision "cannot be said to involve meaningful consideration or participation by the District Court [because] the parties were entitled to do so without leave of the court" is an insult to district court judges. To claim, without any evidence whatsoev-

---

**2.** The majority suggests that ASI's initial decision to bring the duty to defend and indemnification claims together precludes their subsequent dismissal of the indemnification claim. The fact that ASI was not required to litigate the indemnification issue initially, however, does not mean it must be compelled to continue litigating it in order to gain appellate review of the duty to defend issue. Again, a combination of factors can arise after the start of litigation that might cause a party to rethink its litigation strategy, none of which indicate a conspiracy to abuse the resources of this court. Unforseen events in the underlying action, for example, could dramatically shift the incentive and need to immediately address an indemnification claim.

er, that a district court judge who issues an order does so without meaningful consideration does not bode well for those who are on the front lines of litigation battles. The district court is in a far better position to determine whether the parties have engaged in manipulation than we are. To suggest otherwise implies a disturbing lack of faith in the district courts to fulfill their gate-keeping role.

The majority's suggestion that Rule 54(b) certification provides a cure all for the practical problems raised by its decision is also troubling. We have never held that Rule 54(b) certification is required in cases such as the instant one, where the District Court's order of dismissal disposes of all remaining claims. *See R & D Latex Corp.*, 141 F.3d at 918 n. 1 (rejecting argument that because parties failed to get Rule 54(b) certification, there should be a finding of manipulation). Without reference to either precedent or practice, the majority's suggestion would create a novel rule of law that removes discretion from the party in the best position to determine if there has been manipulation.

Rule 54(b) recognizes that the approval of the district court creates jurisdiction in the Circuit Courts for an appeal of fewer than all of the original claims. The rule permits a deviation from the historical rule prohibiting piecemeal litigation when there is a danger of hardship because of a delayed appeal. For all practical purposes, the District Court in the instant case accomplished the same thing, simultaneously eliminating dead wood from its docket in the form of issues that may never need to be decided. With the cost of litigation soaring, consideration of the economic burden of litigation upon clients is a major concern. The voluntary dismissal approved by the District Court actually promoted efficiency, as if it turns out there is no judgment to indemnify, neither we, the District Court, nor the parties will have to consider the indemnification issue.

The majority's approach risks compelling premature and unnecessary litigation of issues that are not yet ripe for full adjudication or, equally troubling, forcing parties to wait for the outcome of underlying litigation before they can seek insurance coverage to defend against it. It is also inordinately disrespectful of the role of the district courts in managing litigation. I dissent.